Kevin J. Rizzi
4205 W Tropicana Ave, K2131
Las Vegas, NV 89103
Phone (702) 328-8552
Email: kevrizzi@gmail.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF SOUTHERN NEVADA**

KEVIN RIZZI

     *Plaintiff,*

*v.*

KELLER WILLIAMS; KAREN
CHRISTOPHER; COLDWELL BANKER

     *Defendants*

2:23-cv-01721-GMN-DJA

COMPLAINT FOR:

1.  BREACH OF CONTRACT
2.  BREACH OF FIDICIARY DUTY
3.  FRAUD
4.  ABUSE

**I.**

**INTRODUCTION AND PURPOSE OF LAWSUIT**

1.  This action arises from a contract entered into between plaintiff Kevin Rizzi
(hereafter "Rizzi" or "Plaintiff") and defendants Karen Christopher, Keller
Williams, and Coldwell Banker, (collectively "Realtors" or "Defendants"), for a
substantial property investment after Defendants sold Plaintiff a home they did not
own. Plaintiff alleges that Defendants plotted to fraudulently entice Plaintiff into a
lucrative investment opportunity, then create financing terms that were impossible
to meet (by indisputable technicality of those terms), thus ultimately creating an
opportunity to take back the property and/or profit from Plaintiff's investment into
the renovation of the home. Plaintiff will prove that the Defendant's breached their
agreements, breached their duties of good faith, committed fraud, and used threats
of, and acts of, violence against the Plaintiff and his associates; such that
incurred/foreseeable damages, and substantial other penalties are requested to be
imposed against Defendants-all to be entered as a judgment in this case.

COMPLAINT

## II.

### PARTIES, JURISDICTION, VENUE, AND GENERAL ALLEGATIONS

2.  At all relevant times alleged herein, plaintiff Rizzi is the owner of the real property located at 1501 Welburn Ave, Gilroy, CA 95020 (referred to as "Rizzi Property"). The plaintiff has established residency in Nevada, dating back to 2004, and currently resides at 4205 W Tropicana Ave, Apt K2131, 89103 as plaintiff was force to flee Nevada in 2005 and again forced to flee California due to ongoing abusive litigation by Defendants.

3.  Defendant Karen Christopher is an individual doing mortgage loans in the State of California.

4.  Defendant Keller Williams is a business whose primary corporate office is located in the State of Texas, and operates out of multiple other states including California.

5.  Defendant Coldwell Banker is a business operating out of multiple States.

6.  Under 28 U.S. Code § 1332, venue and jurisdiction in this Court are proper because of the geographical location of the plaintiff and defendants, and the amount of damages that the plaintiff has sustained is above $75,000.

7.  Due to threats to murder and detain the plaintiff unlawfully, made by the defendants; and the attempts that were made days later to do so, the plaintiff cannot file in the jurisdiction of which the defendants caused the plaintiff's damages.

## III.

### STATEMENT OF CLAIM AND FACTUAL ALLEGATIONS

8.  On or about October 22nd, 2022, Karen Christopher and Coldwell Banker utilized the prior owner of the Property's DocuSign signature to duly represent an elder with dementia, and later was discovered, a "special needs" person (Rizzi) (as they labelled the him in probate court), with authorization to control the plaintiff's finances and devices as they please, at will, without question of authority in an jurisdiction or State; to sell the plaintiff the Property in question.

9.  Defendants then had the plaintiff's construction company begin repairs, and the plaintiff funded these repairs, with instructions and confirmation by Defendants to "gut it" referring to remodeling the entire 3,400 square foot property interior.

10. The seller of the property ultimately passed away in December of 2022, and Coldwell's agent never followed through with closing the contract, even though the plaintiff had the $300,000 down payment, great credit, and was told by Coldwell

that plaintiff wouldn't need the down payment, that he could spend it on remodeling the property creating the homes value to go up, and refinancing would happen at 20% value higher than the purchase price, thus not requiring any more up-front money than the remodeling.

11. The plaintiff's company handles insurance restoration work, and is called into multiple large losses to repair and competitively bid on property damage claims. The plaintiff's retail value of work invested into the property to date is around $600,000, with fees and other damages adding to that number.

12. Upon the death of the seller Donald C Christopher, the plaintiff urged defendants to allow him to send a mandatory 20-day lien notice to the new owners, the heirs of the sellers property, Robert and William Christopher. Defendant's, on January 17th, 2023, told the plaintiff not to, and that they would cover any expenses if it comes to that (filing a lien)

13. The plaintiff filed two liens on the property, which are currently recorded in the proper county of the property's location.

14. Defendant's then told plaintiff he had six months to come up with $1,200,000 after they paid off William and Robert Christopher fot the same amount. As plaintiff tried to get financing through a traditional mortgage lender, no lender would allow to even apply to refinance the home since defendants did not put it in writing or file with recorders office the fact that they tried to sell the plaintiff the home after it was already given to plaintiff by Robert and William Christopher on January 25th, 2023, as recorded with the county.

15. Defendants then began to spread false rumors about plaintiff to his family and friends, threatened the plaintiff's employees, and when trying to sell the home to get out of the mess the Defendant's created, threatened to murder the plaintiff and his employee at a high-end restaurant via the use of agents with Keller Williams. On or around July 29th, 2023, the defendants told plaintiff to go to Westside Grill in Gilroy, CA to sign a purchase agreement. Plaintiff brought his notary to the dinner. The defendants did not have a contract, but instead demanding the plaintiff give them money for unlicensed construction work they did on the home, and were never asked to do. 10 minutes into the dinner, defendants stood up, pounded on the table, said "we've been working like niggers at your house, you owe us this fucking money. We know judges, we'll get warrants issued against you…you never know when someone might come out of your closet with a mask on and kill you."

16. After defendants were kicked out of the restaurant, the notary, who was also the plaintiff's employee handling accounting for his company, and who was pregnant, quit working for the plaintiff due to the fear of the threats we both witnessed at Westside Grill.

17. On August 5th, 2023, the plaintiff was sitting inside of a car dealership in Gilroy, CA when about 4 officers walked in and asked "how's it going? Looks like you're having trouble breathing, why don't you step outside and talk to us". The plaintiff was not struggling to breath, but followed instruction of the officers. Once outside, plaintiff was screened by the Gilroy Fire Department, asking cognitive questions, taking blood pressure readings, etc. The fire department looked at police and told them  that the plaintiff was free to go on about his day, no need for anything regarding mental or physical treatment. It was at that point that the Gilroy Police Department huddled behind their cars, then started yelling "warrant, he's got a warrant".

18. Plaintiff was placed in handcuffs and guided to the back of a squad car. He politely asked why he was being detained, what were the charges, could they read him his rights, etc. At that point the Gilroy Police told the plaintiff he could go to jail, or get in the back of the ambulance, but that he was not allowed to go home. Plaintiff chose the ambulance, and cuffs were removed.

19. Immediately the ambulance tech tried to restrain plaintiff completely, leaving him immobilized. A hand-held blood pressure strapped was placed around the plaintiff's arm, and the tech began furiously pumping pressure, saying things like "you gotta lot of blot clot history in your family don't ya, don't ya!?". As the plaintiff's arm started turning colors and was in excruciating pain, he reminded the tech that fire department had just taken blood pressure and everything was ok. Medical techs continued unnecessary treatment until ultimately plaintiff was able to convince emergency room doctors at St. Louis Hospital in Gilroy, CA, to let him go home. That is when the plaintiff had legitimate concerns for his life, and fled the state, leaving everything he owned behind, and ultimately ending up in Las Vegas hotels where the abuse didn't stop, but plaintiff was safe with the abundance of security at Las Vegas hotels, and more importantly out of California where Defendants have the power to inflict abusive litigation and death by means of unnecessary medical procedures.

20. The plaintiff filed an insurance claim for the defendant's tampering with the electrical work and causing the home to become uninhabitable, but so far, State Farm has sided with the people who yelled "nigger" and threatened to murder him. State Farm has not provided any sort of investigative construction evaluations, nor provided any sort of Additional Living Expense coverages, which violates quite a bit of laws as well. It is unknown if State Farm has affiliations with either Keller Williams or Coldwell Banker.

21. One of the plaintiff's customers through his business was a gentleman named Kai Wessels, who committed, in the plaintiff's opinion, insurance fraud. Mr. Wessels was later determined to be a probate attorney associated with other attorney's who assisted defendants to get an order to control the plaintiff's funds, devices, and control everything financially related to the plaintiff. This created a severe identity theft issue and an abundance of missing money in the plaintiff's bank accounts.

22. The 80 page probate document was mailed to the plaintiff from the Law Offices of Lisa Caputo in California weeks after the closing of the Coldwell contract that was breached.

23. The plaintiff has suffered severe financial abuse by means of cutting off the plaintiff's credit cards, stalking the plaintiff in different cities, breaking into his car to steal documents and a drivers license at one point, showing up to the MGM's Aria resort the 2nd day that the plaintiff was in Las Vegas, and telling security that the plaintiff smuggled a mountain lion into the hotel room, which caused security to kick out the plaintiff onto the street pushing his pet house cat in a suit case in 100+ degree weather. Plaintiff has had to take drastic means in order to survive, including pulling out cash to pay for hotel rooms, gambling a restricted amount of funds to get comped free rooms, and relying and paying anyone who could help the plaintiff get to an established residency, which is currently at the Budget Suites Motel.

24. It is suspected that the defendants still retain control of the plaintiff's devices through their probate order and a 12-year-old CLETS order that the defendants inflicted on the plaintiff. This has caused such a detrimental effect that half the time, it is suspected that calls are routed to people that work for the defendants who ultimately cause further financial damage such as a shipping company the plaintiff paid to move $75,000 worth of personal items from storage to Nevada. The driver never showed, and all contents were stolen, and work vehicles impounded.

## IV.

### FIRST CAUSE OF ACTION-BREACH OF CONTRACT

#### (41 U.S. Code § 6503 - Breach or violation of required contract terms)

25.   Plaintiff realleges and incorporates through reference of all paragraphs before and after as if set fully herein.

26.   Defendants promised that the contract never expires, and that all of plaintiff's expenses would be covered in the event a lien would need to be filed.

27.   As of this filing, defendants have not responded to the demand for payment letter confirmed to have been delivered to each party.

## V.

### SECOND CAUSE OF ACTION-BREACH OF FIDICIARY DUTY

#### (California Code, Civil Code - CIV § 2079.16)

28.   Plaintiff realleges and incorporates through reference of all paragraphs before and after as if set fully herein.

29.   Defendants knew that the seller had dementia, and knew that the buyer's financial control was in their possession through the probate order categorizing the buyer as "special needs", and failed to disclose such to the buyer at the signing and closing of the Coldwell contract.

30.   According to the code, "*Defendants have a fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer and the Seller:*

(a) *Diligent exercise of reasonable skill and care in performance of the agent's duties(b) A duty of honest and fair dealing and good faith. (c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.*"

## VI.

### THIRD CAUSE OF ACTION-FRAUD

#### (Violation of civil code § 3294)

31.   Plaintiff realleges and incorporates through reference of all paragraphs before and after as if set fully herein.

//

//

COMPLAINT

32. Defendants knew that the plaintiff would not be able to find traditional lending, and knew about the probate order to control finances of the plaintiff, and knowingly withheld that information from the plaintiff. Their goal was to regain possession of the property while the plaintiff suffered losses.

## VII.
## FOURTH CAUSE OF ACTION-ABUSE

33. Plaintiff realleges and incorporates through reference of all paragraphs before and after as if set fully herein.

34. Defendants verbally abused plaintiff through text, using profanity to intimidate plaintiff into doing what they wanted him to do.

35. Defendants on two separate occasions threatened the plaintiff's employees, threatening incarceration without justification, and threatening to kill the plaintiff and/or his employee(s).

36. This caused the plaintiff to have to flee his business operations and the State of California, and caused the loss of his accountant, as well as many friends and family who stopped communicating with the plaintiff for fear of retaliation for supporting the plaintiff.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE, plaintiff Kevin Rizzi ("Plaintiff") prays for judgement against the defendants Karen Christopher, Coldwell Banker, and Keller Williams (Defendants"), jointly and severally as follows:

A. Compensatory damages in the amount of $10,000,000.00, which was the estimated value of plaintiff's company at the time of the contracts. Plaintiff has lost all clients and chance to sell company, as was planned per meeting with plaintiff's buyout meeting with the top company in the world in his industry.

B. Threefold damages in the sum of $30,000,000.00 because the case meets Federal RICO Act violations

C. Punitive damages in the amount of $5,000,000.00 as a result of the defendants' specific threats to harm the plaintiff, and the actual harm inflicted days/weeks later.

D.  Prejudgment interest on the principal sum awarded to Plaintiff by the Jury, from October 22nd, 2022, the date the defendants first approved the plaintiff to invest in the property through his construction company, and the funding of the renovations that followed.

E.  Costs and such other relief as are just and proper.


Dated: October 19th, 2023


KEVIN J. RIZZI

Pro Se Plaintiff